**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL PHILLIP ALEXANDER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-269 |
| | : | |
| COMMISSIONER OF THE | : | |
| SOCIAL SECURITY | : | |
| ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**PAMELA A. CARLOS**                                                                    **October 4, 2022**
**U.S. MAGISTRATE JUDGE**

Daniel Phillip Alexander seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying his claim for Supplemental Security Income ("SSI").[1] For the reasons that follow, Mr. Alexander's Request for Review is denied.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Mr. Alexander was born on July 19, 1973. R. at 24.[2] He has a high school education. Id. He has past relevant work as a material handler. Id. On November 22, 2019, Mr. Alexander filed an application for SSI pursuant to Title XVI of the Social Security Act. Id. at 10. He alleged that he became disabled on January 2, 2011, due to musculoskeletal and mental impairments. Id. at 10, 320. The application was initially denied on May 7, 2020 and denied again upon reconsideration on October 8, 2020. Id. at 10. Mr. Alexander then filed a written request for a

---

[1]   In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment. See Doc. Nos. 3, 6.

[2]   Citations to the administrative record will be indicated by "R." followed by the page number.

hearing on October 23, 2020. Id. A telephone hearing regarding the denial of his SSI application was held before Administrative Law Judge Sandra Morales Price ("ALJ") on April 1, 2021. Id. On June 3, 2021, the ALJ issued a decision finding that Mr. Alexander was not disabled. Id. at 25. The Appeals Council denied Mr. Alexander's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner. Id. at 1-3. Mr. Alexander then commenced this action in federal court.

## II.     THE ALJ'S DECISION

In her decision, the ALJ found that Mr. Alexander suffered from the following severe impairments: lumbar degenerative disc disease, cervical sprain/strain, residuals of open reduction internal fixation of right femur, bilateral knee osteoarthritis, obesity, anxiety, depression, trauma stressor-related disorder, and substance use disorder in remission. Id. at 12-13. The ALJ did not find that any impairment, or combination of impairments, met or medically equaled a listed impairment. Id. at 13. The ALJ determined that Mr. Alexander retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except: no operation of foot controls; no kneeling, crouching, crawling or climbing ladders/ropes/scaffolds. He can occasionally balance, as defined in the Selected Characteristics of Occupations . . . in the Dictionary of Occupational Titles [("DOT")]. The claimant can occasionally stoop and climb ramps/stairs. He is limited to frequently reaching and handling. He can have no exposure to unprotected heights; occasional exposure to machinery, vibration, wetness, and extreme cold/heat. Mentally, he is limited to perform simple, routine tasks confined to simple work-related decisions; occasional contact with the public, and frequent contact with supervisors and co-workers. Additionally, he is restricted to work involving only occasional changes in work setting and processes, and no rapid production rate.

Id. at 16-17.

Relying on the vocational expert ("VE") who appeared at the hearing, the ALJ found that there were jobs that existed in significant numbers in the national economy that Mr. Alexander

could perform, such as cafeteria attendant, final inspector, and lens matcher. Id. at 24-25. Accordingly, the ALJ found that Mr. Alexander was not disabled. Id. at 25.

### III. MR. ALEXANDER'S REQUEST FOR REVIEW

In his Request for Review, Mr. Alexander contends that the ALJ's decision was not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of his treating physician and erred in failing to resolve the conflicts between the RFC and the jobs cited by the VE.

### IV. SOCIAL SECURITY STANDARD OF REVIEW

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence." 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). A reviewing court may not undertake a de novo review of the Commissioner's decision to reweigh the evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).

It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted). The court's review is plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1); accord id. § 1382c(a)(3)(A). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted); accord id. § 416.920.

**V.     DISCUSSION**

    **A.     The ALJ Properly Evaluated the Opinion of Mr. Alexander's Treating Physician**

Mr. Alexander argues that the ALJ's RFC assessment was not supported by substantial evidence because the ALJ "failed to adequately evaluate and sufficiently explain" her findings

4

regarding the opinion of Sarah M. Tabby, M.D., his treating physician. Pl.'s Br. (Doc. No. 8) at 4. He contends that the ALJ failed to properly address "the extent to which Dr. Tabby's restrictions were supported by her treatment notes" and the consistency between Dr. Tabby's restrictions and the other medical evidence in the record. Id. at 11.

Under applicable regulations and controlling case law,[3] when considering a medical opinion, the ALJ is not required to give any "specific evidentiary weight, including controlling weight" to any one opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." Id. § 404.1520c(a)-(c). The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. § 404.1520c(a). The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability. Heisey v. Saul, No. 20-324, 2020 WL 6870738, at *9 (E.D. Pa. Nov. 23, 2020). "The more relevant the medical evidence and supporting explanations provided by a medical source are to support his or her medical opinion . . . , the more persuasive the medical opinion . . . ." 20 C.F.R. § 404.1520c(c)(1). In addition, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion . . . will be." Id. § 404.1520c(c)(2).

Dr. Tabby treated Mr. Alexander four times in 2014, once in 2015, and twice in late 2019

---

[3] The Commissioner made "sweeping changes" to the rules regarding the evaluation of medical opinion evidence that became effective on March 27, 2017. Lepperd v. Berryhill, No. 16-02501, 2018 WL 1571954, at *6 n.10 (M.D. Pa. Feb. 20, 2018) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017)), report and recommendation adopted, No. 16-2501, 2018 WL 1566662 (M.D. Pa. Mar. 30, 2018). Those changes abandoned the treating-physician rule. See 20 C.F.R. § 404.1520c. Because Mr. Alexander filed his application for SSI benefits after March 27, 2017, all medical opinions will be evaluated in accordance with the changed rules.

before completing a physical capabilities assessment form on January 20, 2020. R. at 22, 947-50. Dr. Tabby opined that Mr. Alexander could walk one block; sit and stand or walk three hours in an eight-hour workday; could occasionally lift less than ten pounds; would need multiple unscheduled breaks; would frequently be distracted from performing simple work-related tasks; would likely be absent from work three or four times a month due to his impairments; and could use his left hand 0% of the time for manipulation and handling and his right hand 80% of the time for manipulation and 80% for gripping or grasping. Id. at 721-22. Dr. Tabby identified Mr. Alexander's diagnosis as "cervical and lumbar radiculopathy" and "bilateral knee osteoarthritis" but included no explanations for her opinions. Id. at 721.

The ALJ determined that Dr. Tabby's opinion was not persuasive. Id. at 22. The ALJ noted that Dr. Tabby had only begun treating Mr. Alexander again two months before the form was completed and that the opinion included no objective medical findings or basis. Id. The ALJ further explained that Dr. Tabby's opinion was inconsistent with her own treatment records, contradictory to Mr. Alexander's own testimony and activities of daily living, and unsupported by the record as a whole. Id. Finally, the ALJ stated that Dr. Tabby's opined limitations regarding Mr. Alexander's musculoskeletal impairments and obesity were accounted for in the RFC. Id. These findings are supported by substantial evidence.

Dr. Tabby provided her opinion of Mr. Alexander's limitations by checking boxes, without any explanation for her assertions. Id. at 721-22. While there is no requirement that medical opinions regarding SSI applications use quantitative language or specific terms, an ALJ can determine the persuasiveness of a medical opinion in part based on its supporting explanations and medical evidence. 20 C.F.R. §§ 416.913(a)(2), 404.1520c(c)(1) (describing "supportability," one of the two most heavily weighted factors in the persuasiveness analysis). Mr. Alexander argues

6

that Dr. Tabby did support her opinion by listing his diagnosis on the form. Pl.'s Br. at 7. However, Dr. Tabby merely filled out the prompt for "diagnosis" at the top of the form rather than provide any explanation to support her opinions within. R. at 721. Because Dr. Tabby offered no actual explanation or medical evidence for his checkbox form about Mr. Alexander's limitations, the ALJ properly determined that the opinion was not supported by the record as a whole and was not persuasive.

Furthermore, the record is replete with support for the ALJ's finding that Mr. Alexander's physical capabilities were inconsistent with Dr. Tabby's opinion. In terms of manipulative abilities and fine motor skills, Dr. Tabby's own treatment records demonstrate that Mr. Alexander maintained a score of five out of five neurological strength and generally full-strength neuromuscular abilities. Id. at 947, 953-54. Her treatment notes indicate that Mr. Alexander's complaints focused on self-reported pain in the knees, hips, neck, and lower back—which improved with physical therapy and prescription medication—rather than complaints about manipulative limitations. Id. at 947, 949, 951, 953. Beyond Dr. Tabby's own treatment records, other medical evidence demonstrates that Mr. Alexander was able to lift up to twenty pounds in physical therapy appointments and had a normal gait, normal range of motion in all extremities, and no back, neck, joint, or muscle pain. Id. at 768, 975, 983.

Dr. Tabby's opinion is also inconsistent with the medical opinions of state agency medical consultants Minda Bermudez, M.D., and Kurt Dalen Maas, M.D. The ALJ determined that these opinions were partially persuasive as consistent with the evidence but further restricted Mr. Alexander due to his obesity and musculoskeletal impairments. Id. at 22. Drs. Bermudez and Maas both explained that Dr. Tabby "overestimate[d]" Mr. Alexander's restrictions. Id. at 94, 111. They found that, inconsistent with Dr. Tabby's opinion, Mr. Alexander could lift up to twenty

7

pounds occasionally and ten pounds frequently, could sit, stand, and walk six hours in an eight-hour workday, and had no manipulative limitations. Id. at 93-94, 110-11.

Moreover, Mr. Alexander's activities of daily living and testimony contradict Dr. Tabby's opinion that Mr. Alexander had significant lifting and walking limitations. Though Dr. Tabby opined that Mr. Alexander could only occasionally lift less than ten pounds, Mr. Alexander told the ALJ that he could lift fifteen to twenty pounds. Id. at 51. He also stated that he could leave his home independently, use public transportation, drive, and shop in stores. Id. at 374.

Mr. Alexander contends that the ALJ's discussion of Dr. Tabby's opinion is "vague, overly broad, and erroneous" and failed to include references to specific information in Dr. Tabby's treatment records. Pl.'s Br. at 10. While it is essential that an ALJ set forth reasons for his or her decision, an ALJ is not required to use particular language or adhere to a specific formula or format in conducting the analysis. Jones, 364 F.3d at 505. The ALJ need only provide a "'discussion of the evidence' and an 'explanation of reasoning' for his [or her] conclusion sufficient to enable meaningful judicial review." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009) (quoting Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000)). In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions. Id. at 17-22. The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness.

Indeed, the ALJ's failure to cite specifically to the record in the paragraphs about the medical opinions—instead referring to Dr. Tabby's "treatment records" generally—does not indicate that the ALJ did not have substantial evidence to support her findings. An ALJ is required neither to articulate how he or she considered all of the persuasiveness factors in an RFC analysis nor to cite to every supportive document in the record. Fargnoli v. Massanari, 247 F.3d 34, 41 (3d

Cir. 2001) ("[W]e do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records[.]  [W]e do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his [or her] responsibilities under the regulations and case law."); 20 C.F.R. §§ 416.920c(b)(1)-(2) (stating that the ALJ will explain how he or she considered only the supportability and consistency factors for a medical source's medical opinion); see also Phillips v. Barnhart, 91 Fed. Appx. 775, 780 n.7 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it").  Here, the ALJ explicitly considered the supportability and consistency factors relative to Dr. Tabby's opinion by stating that the opinion was not well supported by and was inconsistent with the record.  R. at 22.  The ALJ had no further responsibility to cite to the record.

Finally, Mr. Alexander includes numerous cites to Dr. Tabby's treatment records from 2014, 2015, and 2019 to support his argument that Dr. Tabby's opinion was improperly evaluated.  Pl.'s Br. at 7-11.  Mr. Alexander essentially asks this Court to reweigh the evidence and reach a conclusion more favorable to him.  This Court, however, is not authorized to reweigh the evidence de novo, Monsour Med. Ctr., 806 F.2d at 1190, but only to determine whether substantial evidence exists to support the ALJ's finding, Torres v. Barnhart, 139 F.App'x 411, 413 (3d Cir. 2005).  In this case, the ALJ identified sufficient evidence of record to meet that standard.

### B. The ALJ Did Not Err in Finding that Mr. Alexander Could Perform Other Work That Exists in Significant Numbers in the National Economy

Mr. Alexander next argues that the ALJ "erred in failing to resolve an apparent conflict between the [VE's] testimony . . . and the information in the DOT."  Pl.'s Br. at 14.  He contends that the three positions identified by the VE and ALJ as possible for Mr. Alexander to perform required a higher reasoning level than what the RFC allowed.  Id. at 15.

9

At the fifth step of the disability analysis, the ALJ determines whether the claimant could make an adjustment to other work based on the claimant's RFC, age, education, and previous employment experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this step in the evaluation process, the burden shifts to the ALJ to "provid[e] evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do . . . ." Id. §§ 404.1560(c)(2), 416.960(c)(2).

Here, when posing her hypothetical questions to the VE at the hearing, the ALJ stated that Mr. Alexander should be limited to occupations that required performing simple and routine tasks, making simple work-related decisions, and involving no rapid production rate. R. at 58-59. These occupations constitute a reasoning level or specific vocational preparation ("SVP") of 2, requiring training for a period beyond a short demonstration up to and including one month. See DOT, Appendix C, 1991 WL 688702. In response, the VE testified that he could perform the requirements of occupations at an unskilled light exertional level. R. at 58. The VE included cafeteria attendant, with approximately 120,000 jobs nationally, final inspector, with approximately 50,000 jobs nationally, and lens matcher, with approximately 22,000 jobs nationally, in response to the ALJ's hypothetical question about an individual with Mr. Alexander's characteristics. Id. at 58-60. The ALJ asked the VE if the testimony regarding the positions was consistent with the DOT, which the VE indicated it was. Id. at 60.

Mr. Alexander contends that the jobs identified by the VE and ALJ "cannot be performed by a worker who is limited to simple, unskilled jobs." Pl.'s Br. at 14. He argues that the jobs require a worker to apply "commonsense understanding to carry out detailed but uninvolved written or oral instructions." Pl.'s Br. at 15 (citing United States Department of Labor, *Dictionary of Occupational Titles Vol. 2*, 1009 (4th Ed. Rev. 1991)) (emphasis in original). To support this

argument, Mr. Alexander points to the reasoning levels outlined in the General Educational Development ("GED") scale, which details what education is required of a worker for satisfactory job performance. DOT, Appendix C, 1991 WL 688702.

Mr. Alexander's argument confuses the facts: the Commissioner uses SVP, not GED designation, to determine the skill level of a specific position. Pacheco v. Comm'r of Soc. Sec., No. 19-17032, 2021 WL 4810741, at *6 (D. N.J. Oct. 14, 2021); Anderson v. Colvin, No. 16-47, 2017 WL 372790, at *4 (W.D. Pa. Jan. 26, 2017) ("Contrary to Plaintiff's position, the skill level of a job corresponds with the DOT's classification of a job's [SVP], not the GED reasoning level."); see SSR 00-4, 2000 WL 1898704 (Dec. 4, 2000) ("The DOT lists a[n SVP] time for each described occupation. . . . [U]nskilled work corresponds to an SVP of 1-2[.]"). Here, the cafeteria worker, final inspector, and lens matcher positions all have an SVP of 2, which does not conflict with the ALJ's finding that Mr. Alexander could perform work requiring only simple, routine tasks and simple work-related decisions. See DICOT 311.677-010 Cafeteria Attendant, 1991 WL 672694; DICOT 727.687-504 Final Inspector, 1991 WL 679672; DICOT 713.687-030 Lens Matcher, 1991 WL 679274. The ALJ did not question the VE about the GED at all and Mr. Alexander's counsel did not challenge the VE at the hearing regarding any conflict between the identified jobs and the RFC. R. at 61; see also Suarez v. Astrue, 996 F.Supp.2d 327, 333-34 (E.D. Pa. 2013) ("[T]he issue of a [GED] reasoning development level was not discussed with the [VE], and is not discussed in the ALJ's written decision. The question, therefore, is whether the ALJ's limitation of [Plaintiff] to 'simple, unskilled' work limited her reasoning development level at all. . . . The word 'unskilled' obviously invoked SVP, since that scale corresponds to Social Security skill levels[.]").

Furthermore, even if the ALJ had discussed the GED reasoning levels of the jobs identified by the VE, Mr. Alexander's RFC does not conflict with those reasoning levels. Each of the positions identified by the VE include a GED reasoning level of 2. See DICOT 311.677-010 Cafeteria Attendant, 1991 WL 672694; DICOT 727.687-504 Final Inspector, 1991 WL 679672; DICOT 713.687-030 Lens Matcher, 1991 WL 679274. In the Third Circuit, courts have determined that a GED reasoning level of 2 does not contradict a finding that a worker can perform only simple, routine, and repetitive work. Money v. Barnhart, 91 F. App'x 210, 214-15 (3d Cir. 2004); Jones v. Astrue, 570 F.Supp.2d 708, 715 (E.D. Pa. 2007), aff'd, Jones v. Comm'r Soc. Sec., 275 F. App'x 166 (3d Cir. 2008) ("[T]here is no conflict between [GED] reasoning level 2 and an RFC limitation to simple, repetitive[,] or routine tasks."). Here, the ALJ restricted to Mr. Alexander to simple, routine tasks and simple work-related decisions in the context of unskilled, light work, which does not conflict with a GED reasoning level of 2. Because there was no conflict to resolve between the jobs identified by the VE and the RFC, the ALJ did not err in determining that Mr. Alexander could perform other work that exists in significant numbers in the national economy.

## VI.    CONCLUSION

For the reasons explained above, Mr. Alexander's Request for Review is **DENIED**. The ALJ's decision is supported by substantial evidence. The final decision of the Commissioner of Social Security is **AFFIRMED**. An appropriate order follows.

BY THE COURT:

*/s/ Pamela A. Carlos*
PAMELA A. CARLOS
UNITED STATES MAGISTRATE JUDGE